Docusign Envelope ID: FEFBE8CD-D57A-45C6-87A9-276393D7402C

BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
SARAH E. EDWARDS
MICHAEL BACHARACH
Trial Attorneys
United States Department of Justice
Fraud Section, Criminal Division
    300 N. Los Angeles St., Suite 2001
    Los Angeles, California 90012
    Telephone:   (202) 913-4782
                  (202) 297-9384
    E-mail:   sarah.edwards@usdoj.gov
               michael.bacharach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>           v.<br><br>MIHRAN PANOSYAN,<br>    aka "Mike Hope,"<br><br>       Defendant. | No. CR 2:24-CR-348-SVW-5<br><br><u>PLEA AGREEMENT FOR DEFENDANT</u><br><u>MIHRAN PANOSYAN</u> |

    1.   This constitutes the plea agreement between MIHRAN PANOSYAN, also known as "Mike Hope," ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") and the Fraud Section of the Criminal Division of the United States Department of Justice (collectively with the USAO, "the United States") in the above-captioned case.  This agreement is limited to the United States and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

//

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to count fourteen of the indictment in <u>United States v. Mihran Panosyan</u>, CR No. 2:24-348-SVW, which charges defendant with concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

1        i.   Complete the Financial Disclosure Statement on a form

2   provided by the United States and, within 30 days of defendant's

3   entry of a guilty plea, deliver the signed and dated statement, along

4   with all of the documents requested therein, to the United States by

5   either email at usacac.FinLit@usdoj.gov (preferred) or mail to the

6   USAO Financial Litigation Section at 300 North Los Angeles Street,

7   Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's

8   ability to pay criminal debt shall be assessed based on the completed

9   Financial Disclosure Statement and all required supporting documents,

10  as well as other relevant information relating to ability to pay.

11       j.   Authorize the United States to obtain a credit report

12  upon returning a signed copy of this plea agreement.

13       k.   Consent to the United States inspecting and copying

14  all of defendant's financial documents and financial information held

15  by the United States Probation and Pretrial Services Office.

16       l.   Defendant understands and acknowledges that as a

17  result of pleading guilty pursuant to this agreement, defendant will

18  be excluded from Medicare, Medicaid, and all Federal health care

19  programs.  Defendant agrees to complete and execute all necessary

20  documents provided by the United States Department of Health and

21  Human Services, or any other department or agency of the federal

22  government, to effectuate this exclusion within 60 days of receiving

23  the documents.  This exclusion will not affect defendant's right to

24  apply for and receive benefits as a beneficiary under any Federal

25  health care program, including Medicare and Medicaid.

26  3.   Defendant further agrees:

27       a.   To immediately and irrevocably forfeit, on behalf of

28  defendant and any entity in which defendant has held an ownership

3

1  interest or has served as an officer, director, manager, partner,

2  trustee, or other representative (which entities include, without

3  limitation, MJ Home Health Services, Inc.; Healthy Life Hospice,

4  Inc.; Prayer of Hope Hospice; Dynamic Hospice Care, Inc.; and House

5  of Angels Hospice, Inc.;) to the United States of America all right,

6  title, and interest of defendant in and to any and all monies,

7  properties, and/or assets of any kind, derived from or acquired as a

8  result of the illegal activity to which defendant is pleading guilty,

9  specifically including, but not limited to, the following:

10          i.   $75,447.75 in funds seized from Banc of

11  California account number ending in x8303;

12          ii.  $2,626,324.73 in funds seized from Bank of

13  California account ending in x9860;

14          iii. The real property located at 16817 Rayen Street,

15  Northridge, California, Assessor's Parcel Number 2688-027-001;

16          iv.  $218,571.07 in funds seized from Chase Bank

17  Account ending in x8151; and

18          v.   One 2019 Mercedes-Benz AMG GT63 S, Vehicle

19  Identification Number WDD7X8KB0KA006620 (collectively, the

20  "Forfeitable Property").

21      b.   To the Court's entry of an order of forfeiture at or

22  before sentencing with respect to the Forfeitable Property and to the

23  forfeiture of the property.

24      c.   That the Preliminary Order of Forfeiture shall become

25  final as to the defendant upon entry.

26      d.   To take whatever steps are necessary to pass to the

27  United States clear title to the Forfeitable Property, including,

28  without limitation, the execution of a consent decree of forfeiture

4

Docusign Envelope ID: FEFBF8CD-D57A-46C6-87A9-276392D7402C

and the completing of any other legal documents required for the transfer of title to the United States.

    e.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property. Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

    f.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

    g.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

    h.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

    i.   That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

    j.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other

1    means); and (3) all constitutional, legal, and equitable defenses to

2    the forfeiture of the Forfeitable Property in any proceeding on any

3    grounds including, without limitation, that the forfeiture

4    constitutes an excessive fine or punishment. Defendant acknowledges

5    that forfeiture of the Forfeitable Property is part of the sentence

6    that may be imposed in this case and waives any failure by the Court

7    to advise defendant of this, pursuant to Federal Rule of Criminal

8    Procedure 11(b)(1)(J), at the time the Court accepts defendant's

9    guilty plea.

10         k.    The parties further agree that, pursuant to the Asset

11   Forfeiture Policy Manual (2025), Chapter 14, Sec. II. B.2 and 28

12   C.F.R. Part 9.8, upon a determination by the government that it can

13   make the required representations set forth therein, and if requested

14   by defendant, the government will submit a restoration request to the

15   Money Laundering and Asset Recovery Section of the Department of

16   Justice, seeking approval for any assets forfeited to be restored

17   to the victims in this case, which may, in turn, satisfy in full or

18   part any restitution order. Defendant has acknowledged that the

19   Attorney General, or his designee, has the sole discretion to approve

20   or deny the restoration request.

21                     THE UNITED STATES' OBLIGATIONS

22        4.    The United States agrees to:

23             a.    Not contest facts agreed to in this agreement.

24             b.    Abide by all agreements regarding sentencing contained

25   in this agreement.

26             c.    At the time of sentencing, move to dismiss the

27   remaining counts of the indictment against defendant.  Defendant

28   agrees, however, that at the time of sentencing the Court may

1    consider any dismissed charges in determining the applicable

2    Sentencing Guidelines range, the propriety and extent of any

3    departure from that range, and the sentence to be imposed.

4         d.    At the time of sentencing, provided that defendant

5    demonstrates an acceptance of responsibility for the offenses up to

6    and including the time of sentencing, recommend a two-level reduction

7    in the applicable Sentencing Guidelines offense level, pursuant to

8    U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

9    additional one-level reduction if available under that section.

10        e.    Not seek a sentence of imprisonment above the high end

11   of the applicable Sentencing Guidelines range, provided that the

12   offense level used by the Court to determine that range is 25 or

13   higher and provided that the Court does not depart downward in

14   offense level or criminal history category.  For purposes of this

15   agreement, the Sentencing Guidelines range is that defined by the

16   Sentencing Table in U.S.S.G. Chapter 5, Part A.

17                          <u>NATURE OF THE OFFENSES</u>

18        5.    Defendant understands that for defendant to be guilty of

19   the crime charged in count fourteen, that is, concealment money

20   laundering, in violation of Title 18, United States Code, Section

21   1956(a)(1)(B)(i), the following must be true: (a) defendant conducted

22   a financial transaction involving property that represented the

23   proceeds of health care fraud; (b) defendant knew that the property

24   represented the proceeds of some form of unlawful activity; and

25   (c) defendant knew that the transaction was designed in whole or in

26   part to conceal or disguise the nature, location, source, ownership,

27   or control of the proceeds.

28

<u>PENALTIES AND RESTITUTION</u>

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the United States' compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The defendant agrees that the applicable amount of restitution is at least $4,680,146, while the United States reserves the right to argue that the applicable amount of restitution is $4,956,996.  The parties recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future.

Defendant understands that while there may be arguments that
defendant can raise in immigration proceedings to avoid or delay
removal, removal is presumptively mandatory and a virtual certainty
in this case.  Defendant further understands that removal and
immigration consequences are the subject of a separate proceeding and
that no one, including his attorney or the Court, can predict to an
absolute certainty the effect of his convictions on his immigration
status.  Defendant nevertheless affirms that he wants to plead guilty
regardless of any immigration consequences that his plea may entail,
even if the consequence is automatic removal from the United States.

FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the
offenses to which defendant is agreeing to plead guilty and that the
Forfeitable Property was derived from or acquired as a result of the
illegal activity described herein.  Defendant and the United States
agree to the statement of facts below and agree that this statement
of facts is sufficient to support a plea of guilty to the charge
described in this agreement and to establish the Sentencing
Guidelines factors set forth in paragraph 13 below but is not meant
to be a complete recitation of all facts relevant to the underlying
criminal conduct or all facts known to either party that relate to
that conduct:

INDIVIDUALS

Defendant was a resident of Winnetka, California, married
to codefendant Susanna Harutyunyan.  Defendant maintained no real
property, vehicles, or bank accounts in his own name, but rather
accessed and used real property, vehicles, and bank accounts in the

1   names of codefendant Harutyunyan (with her knowledge and consent) and

2   others.

3           B.L. was a citizen of Russia who was issued a United States

4   visa in or around April 2010, and departed the United States on or

5   about September 29, 2010.

6           D.G. was a citizen of Russia who was issued a United States

7   visa in or around June 2013, and departed the United States on or

8   about September 18, 2013.

9           A.M. was a citizen of Russia who was issued a United States

10  visa in or around February 2018, and departed the United States on or

11  about May 30, 2019.

12          I.S. was a citizen of Ukraine who was issued a United

13  States visa in or around June 2010, and departed the United States on

14  or about September 10, 2010.

15  ENTITIES

16          Healthy Life Hospice, Inc. ("Healthy Life") was a purported

17  hospice company that used addresses at 12509 Oxnard Street, Suite

18  215, North Hollywood, California, and 6422 Bellingham Avenue, No.

19  201, Los Angeles, California.  Beginning in or around April 2019,

20  B.L. was purportedly the sole owner of Healthy Life, according to

21  records submitted to the State of California and Medicare.  During

22  the period of B.L.'s purported ownership, Healthy Life existed only

23  as a storefront, had no legitimate patients, no legitimate employees,

24  and provided no hospice services.

25          Prayer of Hope Hospice ("Prayer of Hope") was a purported

26  hospice company that used an address at 11336 Camarillo Street, Unit

27  305, West Toluca Lake, California.  Beginning in or around February

28  2020, D.G. was purportedly the Chief Executive Officer ("CEO"), Chief

1    Financial Officer ("CFO"), and Secretary of Prayer of Hope, and

2    beginning in or around March 2020, A.M. was purportedly the sole

3    owner, and beginning in or around April 2020, A.M. purportedly became

4    the CEO, CFO, and Secretary of Prayer of Hope, according to records

5    submitted to the State of California and Medicare.  During the period

6    of D.G. and A.M.'s purported ownership and control, Prayer of Hope

7    existed only as a storefront, had no legitimate patients, no

8    legitimate employees, and provided no hospice services.

9         Dynamic Hospice Care, Inc. ("Dynamic") was a purported

10   hospice company that used addresses at 10319 Norris Avenue, Suite C,

11   Pacoima, California, and 5958 Vineland Avenue, Unit D, North

12   Hollywood, California.  Beginning in or around July 2020, I.S. was

13   purportedly the CEO, CFO, and Secretary of Dynamic, according to

14   records submitted to the State of California.  Beginning no later

15   than March 2021, I.S. was purportedly the sole owner of Dynamic,

16   according to records submitted to Medicare.  During the period of

17   I.S.'s purported ownership and control, Dynamic existed only as a

18   storefront, had no legitimate patients, no legitimate employees, and

19   provided no hospice services.

20        House of Angels Hospice, Inc. ("House of Angels") was a

21   purported hospice company that used an address at 5627 Sepulveda

22   Boulevard, Suite 218, Van Nuys, California.  Beginning in or around

23   April 2021, codefendant Juan Esparza owned, controlled, and operated

24   House of Angels.  During the period of codefendant Esparza's

25   ownership and control, House of Angels existed only as a storefront,

26   had no legitimate patients, no legitimate employees, and provided no

27   hospice services.

28

1    Winnetka Dental Lab ("Winnetka Dental") was purportedly a

2  dental supply business that used the Winnetka Residence as its

3  physical address. Codefendant Harutyunyan was the owner and

4  proprietor of Winnetka Dental Lab, according to bank and tax records.

5  Defendant PANOSYAN claimed to investigators that he actually owned

6  and controlled Winnetka Dental.

7  RESIDENCES

8    The Winnetka Residence was a single-family residence

9  located in Winnetka, California.  Defendant resided at the Winnetka

10  Residence with codefendant Harutyunyan.

11    The Northridge Residence was a single-family residence

12  located in Northridge, California.  Defendant and codefendant

13  Harutyunyan had access to and control of the Northridge Residence,

14  which was owned in the name of codefendant Harutyunyan.

15    The Granada Hills Residence was a single-family residence

16  located in Granada Hills, California.  Relatives of defendant resided

17  at the Granada Hills Residence, which was owned in the name of

18  codefendant Harutyunyan.

19  THE HOSPICE FRAUD SCHEME

20    Beginning no later than in or around February 2019, and

21  continuing through at least in or around January 2023, codefendant

22  Petros Fichidzhyan knowingly engaged in a scheme with others,

23  including codefendants Juan Esparza and Karpis Srapyan, to defraud

24  Medicare.

25    Codefendant Fichidzhyan and his coschemers established

26  control over hospice entities, including House of Angels, Healthy

27  Life, Prayer of Hope, and Dynamic (collectively, the "Sham

28  Hospices"), including by placing the hospice entities and hospice

1  entity bank accounts in the names of foreign persons who at one time

2  had been present in the United States on U.S. visas, but had departed

3  the United States (the "Impersonated Identities"), including, among

4  others, B.L., D.G., A.M., and I.S.

5       Between no later than in or around July 2019 and continuing

6  to at least in or around January 2023, Fichidzhyan and his coschemers

7  submitted and caused to be submitted false and fraudulent claims to

8  Medicare on behalf of the Sham Hospices, seeking payment for

9  purported hospice services on behalf of, and using the names and

10 personal identifying information of, Medicare beneficiaries who in

11 fact were ineligible for hospice services covered by Medicare, not

12 terminally ill, and had never elected nor received hospice care from

13 the Sham Hospices, thereby defrauding Medicare and committing health

14 care fraud, in violation of 18 U.S.C. § 1347.

15      As a result of Fichidzhyan and his coschemers' false and

16 fraudulent claims for hospice services that were neither medically

17 necessary nor rendered, Medicare paid the Sham Hospices approximately

18 $15,992,154.  This includes approximately $4,483,840 in payments to

19 Healthy Life (between July 2019 and April 2023), $3,776,040 in

20 payments to Prayer of Hope (between June 2020 and July 2023),

21 $6,345,776 in payments to Dynamic (between November 2020 and July

22 2023), and $1,386,497 in payments to House of Angels (between July

23 2021 and January 2023).

24 THE MONEY LAUNDERING CONDUCT

25      After codefendant Fichidzhyan and his coschemers

26 fraudulently obtained payments from Medicare deposited into bank

27 accounts associated with the Sham Hospices as described above,

28 defendant and others transferred and caused to be transferred

14

proceeds of the health care fraud scheme (knowing they were proceeds of unlawful activity) between and among numerous assets and bank accounts — including, but not limited to, assets, accounts, and credit cards in the names of the Sham Hospices and the Impersonated Identities, as well as accounts in the names of shell entities — to conceal the nature, location, source, ownership, and control of the fraud proceeds.  Defendant engaged in sophisticated laundering in that he, for example, transferred funds between and among accounts including accounts in the names of the Sham Hospices, Impersonated Identities, and other shell corporations.

        As part of this money laundering scheme, defendant and his coschemers, each aiding and abetting each other, maintained at the Winnetka and Northridge Residences materials associated with Prayer of Hope, Dynamic, Healthy Life, and the Impersonated Identities. This included, at the Winnetka Residence, a checkbook for D.G.'s Wells Fargo account ending x2861; lists of the Impersonated Identities with their names, dates of birth, and social security numbers; driver's licenses and social security cards in the name of I.S.; a voided check for a Prayer of Hope bank account; and internet bills for Prayer of Hope.  It further included, at the Northridge Residence, in the name of D.G. and other Impersonated Identities, social security cards, mail, business registration statements, auto loan statements, and printed sheets of personal identifying information and passwords; a credit card in the name of D.G.; a debit card and checkbook for D.G.'s Wells Fargo account ending x2861; and cell phones with identifying information related to Healthy Life, Dynamic, B.L., D.G., I.S., and A.M.

1    Defendant together with his coschemers, each aiding and

2  abetting each other, accessed from the Northridge Residence email and

3  bank accounts associated with D.G., B.L., A.M., and Prayer of Hope,

4  as well as other bank accounts that received funds derived from the

5  scheme.

6    Defendant further conducted financial transactions

7  associated with the scheme while driving a vehicle registered to

8  D.G., the same vehicle for which loan statements were maintained at

9  the Northridge Residence.

10    On or about March 2, 2022, in Los Angeles County, within

11  the Central District of California, and elsewhere, defendant, as

12  captured on bank surveillance footage, knowingly conducted and

13  willfully caused to be conducted a financial transaction involving

14  property that represented the proceeds of health care fraud, in

15  violation of Title 18, United States Code, Section 1347,

16  specifically, the transfer of approximately $46,600 from an account

17  at Banc of California ending in x5413 in the name of Dynamic, on

18  which I.S. was the sole listed signatory, by means of check into an

19  account at Banc of California ending in x9506 in the name of A.M., on

20  which A.M. was the sole signatory, affecting interstate commerce,

21  knowing the property involved represented the proceeds of some form

22  of unlawful activity, namely, health care fraud, in violation of

23  Title 18, United States Code, Section 1347, and knowing that the

24  transaction was designed in whole and in part to conceal and disguise

25  the nature, location, source, ownership, and control of the proceeds

26  of said specified unlawful activity, as charged in count fourteen of

27  the Indictment.

28

1    Pursuant to this money laundering scheme, as relevant

2   conduct, defendant, together with his codefendants and others, each

3   aiding and abetting one another, laundered at least $4,680,146 of the

4   health care fraud proceeds from the hospice fraud scheme.  This

5   includes approximately:  $1,037,750 in payments to bank accounts on

6   which codefendant Harutyunyan was the signatory, including Winnetka

7   Dental Citibank account ending in x4913, which were also used and

8   accessed by defendant; $793,920 in payments for the Granada Hills

9   Residence, in which resided relatives of defendant; $821,039 in

10  payments for the Northridge Residence; $365,400 transferred to

11  business bank accounts held in the name of the purported business

12  Genius Daycare, which accounts were used to pay personal expenses for

13  defendant and codefendant Harutyunyan; and $7,320 in private school

14  tuition payments for a minor child of defendant and codefendant

15  Harutyunyan.  It further includes approximately $1,664,150

16  transferred into the Wells Fargo account ending x2861 in the name of

17  D.G., which defendant together with coschemers had access to via

18  checkbooks and a debit card found at the Northridge Residence and the

19  Winnetka Residence.

20                          SENTENCING FACTORS

21  12.  Defendant understands that in determining defendant's

22  sentence the Court is required to calculate the applicable Sentencing

23  Guidelines range and to consider that range, possible departures

24  under the Sentencing Guidelines, and the other sentencing factors set

25  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

26  Sentencing Guidelines are advisory only, that defendant cannot have

27  any expectation of receiving a sentence within the calculated

28  Sentencing Guidelines range, and that after considering the

17

1  Sentencing Guidelines and the other § 3553(a) factors, the Court will

2  be free to exercise its discretion to impose any sentence it finds

3  appropriate up to the maximum set by statute for the crimes of

4  conviction.

5      13.   Defendant and the United States agree to the following

6  applicable Sentencing Guidelines factors:

7      Base Offense Level:          8          U.S.S.G.§ 2S1.1(a)(2)

8      Value of Laundered Funds of
   More than $3,500,000 but Less         U.S.S.G. §§ 2S1.1(a)(2),
9      than $9,500,000:          +18              2B1.1(b)(1)(J)

10     Concealment Money Laundering:   +2      U.S.S.G. § 2S1.1(b)(2)

11     Sophisticated Laundering:      +2       U.S.S.G. § 2S1.1(b)

12     Acceptance of Responsibility:  -3        U.S.S.G. § 3E1.1

13     Total Offense Level:           27

14

15  The United States will agree to a two-level downward adjustment for

16  acceptance of responsibility (and, if applicable, move for an

17  additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))

18  only if the conditions set forth in paragraph 4(d) are met and if

19  defendant has not committed, and refrains from committing, acts

20  constituting obstruction of justice within the meaning of U.S.S.G.

21  § 3C1.1, as discussed below.  Subject to paragraph 27 below,

22  defendant and the United States agree not to seek, argue, or suggest

23  in any way, either orally or in writing, that any other specific

24  offense characteristics, adjustments, or departures relating to the

25  offense level be imposed, except that the parties agree they may

26  argue for or contest the application of a two-level reduction under

27  U.S.S.G. § 4C1.1.  Defendant agrees, however, that if, after signing

28  this agreement but prior to sentencing, defendant were to commit an

1  act, or the United States were to discover a previously undiscovered

2  act committed by defendant prior to signing this agreement, which

3  act, in the judgment of the United States, constituted obstruction of

4  justice within the meaning of U.S.S.G. § 3C1.1, the United States

5  would be free to seek the enhancement set forth in that section and

6  to argue that defendant is not entitled to a downward adjustment for

7  acceptance of responsibility under U.S.S.G. § 3E1.1.

8       14.  Defendant understands that there is no agreement as to

9  defendant's criminal history or criminal history category.

10      15.  Defendant and the United States reserve the right to argue

11 for a sentence outside the sentencing range established by the

12 Sentencing Guidelines based on the factors set forth in 18 U.S.C.

13 § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

14                     WAIVER OF CONSTITUTIONAL RIGHTS

15      16.  Defendant understands that by pleading guilty, defendant

16 gives up the following rights:

17           a.   The right to persist in a plea of not guilty.

18           b.   The right to a speedy and public trial by jury.

19           c.   The right to be represented by counsel — and if

20 necessary have the Court appoint counsel — at trial.  Defendant

21 understands, however, that, defendant retains the right to be

22 represented by counsel — and if necessary have the Court appoint

23 counsel — at every other stage of the proceeding.

24           d.   The right to be presumed innocent and to have the

25 burden of proof placed on the government to prove defendant guilty

26 beyond a reasonable doubt.

27           e.   The right to confront and cross-examine witnesses

28 against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

17.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

18.  Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the range corresponding to an offense level of 27 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law,

Docusign Envelope ID: F5F5E8CD-B57A-45C6-8709-276392D7102C

1  the constitutionality or legality of defendant's sentence, provided

2  it is within the statutory maximum; (e) the amount and terms of any

3  restitution order, provided it requires payment of no more than

4  $4,956,996; (f) the term of probation or supervised release imposed

5  by the Court, provided it is within the statutory maximum; and

6  (g) any of the following conditions of probation or supervised

7  release imposed by the Court: the conditions set forth in Second

8  Amended General Order 20-04 of this Court; the drug testing

9  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

10  alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

11      19.  Defendant also gives up any right to bring a post-

12  conviction collateral attack on the convictions or sentence,

13  including any order of restitution, except a post-conviction

14  collateral attack based on a claim of ineffective assistance of

15  counsel, a claim of newly discovered evidence, or an explicitly

16  retroactive change in the applicable Sentencing Guidelines,

17  sentencing statutes, or statutes of conviction.  Defendant

18  understands that this waiver includes, but is not limited to,

19  arguments that the statute to which defendant is pleading guilty is

20  unconstitutional, and any and all claims that the statement of facts

21  provided herein is insufficient to support defendant's plea of

22  guilty.

23      20.  The United States agrees that, provided (a) all portions of

24  the sentence are at or below the statutory maximum specified above

25  and (b) the Court imposes a term of imprisonment within or above the

26  range corresponding to an offense level of 25 and the criminal

27  history category calculated by the Court, the United States gives up

28  its right to appeal any portion of the sentence, with the exception

1    that the United States reserves the right to appeal the amount of

2    restitution ordered if that amount is less than $4,680,146.

3                  RESULT OF WITHDRAWAL OF GUILTY PLEA

4         21.  Defendant agrees that if, after entering a guilty plea

5    pursuant to this agreement, defendant seeks to withdraw and succeeds

6    in withdrawing defendant's guilty plea on any basis other than a

7    claim and finding that entry into this plea agreement was

8    involuntary, then (a) the United States will be relieved of all of

9    its obligations under this agreement; and (b) should the United

10   States choose to pursue any charge or any civil, administrative, or

11   regulatory action that was either dismissed or not filed as a result

12   of this agreement, then (i) any applicable statute of limitations

13   will be tolled between the date of defendant's signing of this

14   agreement and the filing commencing any such action; and

15   (ii) defendant waives and gives up all defenses based on the statute

16   of limitations, any claim of pre-indictment delay, or any speedy

17   trial claim with respect to any such action, except to the extent

18   that such defenses existed as of the date of defendant's signing this

19   agreement.

20               RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

21        22.  Defendant agrees that if the count of conviction is

22   vacated, reversed, or set aside, both the United States and defendant

23   will be released from all their obligations under this agreement.

24                  EFFECTIVE DATE OF AGREEMENT

25        23.  This agreement is effective upon signature and execution of

26   all required certifications by defendant, defendant's counsel, and a

27   Trial Attorney for the U.S. Department of Justice.

28

1                        <u>BREACH OF AGREEMENT</u>

2        24.  Defendant agrees that if defendant, at any time after the

3   signature of this agreement and execution of all required

4   certifications by defendant, defendant's counsel, and a Trial

5   Attorney, knowingly violates or fails to perform any of defendant's

6   obligations under this agreement ("a breach"), the United States may

7   declare this agreement breached.  All of defendant's obligations are

8   material, a single breach of this agreement is sufficient for the

9   United States to declare a breach, and defendant shall not be deemed

10  to have cured a breach without the express agreement of the United

11  States in writing.  If the United States declares this agreement

12  breached, and the Court finds such a breach to have occurred, then:

13  (a) if defendant has previously entered a guilty plea pursuant to

14  this agreement, defendant will not be able to withdraw the guilty

15  plea, and (b) the United States will be relieved of all its

16  obligations under this agreement.

17       25.  Following the Court's finding of a knowing breach of this

18  agreement by defendant, should the United States choose to pursue any

19  charge or any civil, administrative, or regulatory action that was

20  either dismissed or not filed as a result of this agreement, then:

21            a.   Defendant agrees that any applicable statute of

22  limitations is tolled between the date of defendant's signing of this

23  agreement and the filing commencing any such action.

24            b.   Defendant waives and gives up all defenses based on

25  the statute of limitations, any claim of pre-indictment delay, or any

26  speedy trial claim with respect to any such action, except to the

27  extent that such defenses existed as of the date of defendant's

28  signing this agreement.

Docusign Envelope ID: F5F5E8CD-B57A-45C6-87A9-276392D7102C

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits

1    both the United States and defendant to submit full and complete

2    factual information to the United States Probation and Pretrial

3    Services Office and the Court, even if that factual information may

4    be viewed as inconsistent with the facts agreed to in this agreement,

5    this paragraph does not affect defendant's and the United States'

6    obligations not to contest the facts agreed to in this agreement.

7        28.  Defendant understands that even if the Court ignores any

8    sentencing recommendation, finds facts or reaches conclusions

9    different from those agreed to, and/or imposes any sentence up to the

10   maximum established by statute, defendant cannot, for that reason,

11   withdraw defendant's guilty plea, and defendant will remain bound to

12   fulfill all defendant's obligations under this agreement.  Defendant

13   understands that no one — not the prosecutor, defendant's attorney,

14   or the Court — can make a binding prediction or promise regarding the

15   sentence defendant will receive, except that it will be between the

16   statutorily mandated sentence and the statutory maximum.

17                         <u>NO ADDITIONAL AGREEMENTS</u>

18       29.  Defendant understands that, except as set forth herein,

19   there are no promises, understandings, or agreements between the

20   United States and defendant or defendant's attorney, and that no

21   additional promise, understanding, or agreement may be entered into

22   unless in a writing signed by all parties or on the record in court.

23

24

25

26

27

28

Docusign Envelope ID: FEFBE8CD-D57A-45C6-87A9-276392D7102C

1         <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2     30.   The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
  FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 BILAL A. ESSAYLI
  United States Attorney

9

10 _____      6/9/2025
  MICHAEL BACHARACH                       Date
11 SARAH E. EDWARDS
  Trial Attorneys

12 _____      6/8/2025
13 MIHRAN PANOSYAN                         Date
  Defendant

14 _____      06/08/2025
15 MARIYA MELKONYAN                         Date
  Attorney for Defendant MIHRAN
16 PANOSYAN

17

18

19

20

21

22

23

24

25

26

27

28

1                    <u>CERTIFICATION OF DEFENDANT</u>

2        I have read this agreement in its entirety.  I have had enough

3   time to review and consider this agreement, and I have carefully and

4   thoroughly discussed every part of it with my attorney.  I understand

5   the terms of this agreement, and I voluntarily agree to those terms.

6   I have discussed the evidence with my attorney, and my attorney has

7   advised me of my rights, of possible pretrial motions that might be

8   filed, of possible defenses that might be asserted either prior to or

9   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charge and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19

20  MIHRAN PANOSYAN                          6/8/2025
    Defendant                                Date

21

22

23

24

25

26

27

28

<pre>
 1                    CERTIFICATION OF INTERPRETER

 2      I, ___Mariya Melkonyan___, am fluent in the written and spoken

 3  English and Armenian languages.  I accurately translated this entire

 4  agreement from English into Armenian to defendant HARUTYUNYAN on this

 5  date.

 6  _____        06/08/2025
                                         _____
 7  INTERPRETER                              Date

 8
                CERTIFICATION OF DEFENDANT'S ATTORNEY
 9
        I am MIHRAN PANOSYAN's attorney.  I have carefully and
10
    thoroughly discussed every part of this agreement with my client.
11
    Further, I have fully advised my client of his rights, of possible
12
    pretrial motions that might be filed, of possible defenses that might
13
    be asserted either prior to or at trial, of the sentencing factors
14
    set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
15
    provisions, and of the consequences of entering into this agreement.
16
    To my knowledge: no promises, inducements, or representations of any
17
    kind have been made to my client other than those contained in this
18
    agreement; no one has threatened or forced my client in any way to
19
    enter into this agreement; my client's decision to enter into this
20
    agreement is an informed and voluntary one; and the factual basis set
21
    forth in this agreement is sufficient to support my client's entry of
22
    a guilty plea pursuant to this agreement.
23

24  _____        06/08/2025
                                         _____
25  MARIYA MELKONYAN                         Date
    Attorney for Defendant MIHRAN
26  PANOSYAN

27

28
                                   28
</pre>